Our next case is number 221822, Boyer v. United States. Okay, Mr. Smith. Good morning, your honors. My name is Will Smith and I represent Leslie Boyer, the appellant. May it please the court. Can I ask you a quick housekeeping question first? Yes, ma'am. The question I have is much of the appendix before us is marked, I believe, confidential. Many documents are marked in yellow that appear to be pleadings or handbooks. And I'm wondering, is anything in this appendix confidential? Because it appears there's a significant over-designation that's occurred. We respected the designations by the government and the trial court in putting the appendix together. And I agree with you, your honor, when I look at the appendix. The trial court's protective order was very broad. And what we attempted to do was comply with that in putting the appendix together. Just so you know, like on appeal, our rules do provide the parties should get together and work out whether confidentiality still exists. So in the future, I would recommend doing that for both of the parties. And I would like to hear from the government later whether any of this is confidential. Why don't we do that now? Yeah, that's a good idea. Why is this material marked confidential? Your honor, good morning, by the way. I think that we could make it into a public appendix and remove the designation. I realize there was a protective order, except the PII was all redacted. And so in consideration of this court's rules, we should have consulted in advance and had more of it public. Well, I appreciate that, but probably this stuff should not have been marked confidential in the first place. So I don't know whether you were the counsel below or not, but in the first instance, care should be taken not to mark things confidential. Yes, your honor. All right, but so why don't you file a stipulation that the appendix material is not confidential? Yes, your honor. All right, so why don't we start Mr. Smith's time again? Thank you, your honor. Go ahead. Okay. May it please the court, in this Equal Pay Act case, the court should hold that prior pay alone may not serve as a differential based on another factor other than sex for purposes of establishing an affirmative defense for the employer. So you're not arguing for the Ninth Circuit position or the position that's articulated by the amicus? In this case, your honor, I don't think the court needs to go that far, because the record, the undisputed record, we have the undisputed admissions by the decision makers that she boarded Ms. Scafianos, that she's the recommended official, that she boarded everybody pretty much the same except for the prior pay stubs. And there's no evidence from the government establishing that anything other than prior pay is responsible for the differential at question here. So I don't think your honors need to go as far as the Ninth Circuit goes. We have to do some form of statutory interpretation, right? Yes. So we've got to choose something. I guess you're saying you can win under the Ninth Circuit understanding or one of the more middle ground circuit understandings. Right. And we would point towards the Tenth and Eleventh Circuits, which say that prior pay alone cannot carry the affirmative defense, but when in combination, other factors, prior pay can be considered in combination with other factors. And that's an approach you're urging that we adopt here? Yes, Your Honor, because I think under that approach, summary judgment for the government was erroneous, and the trial court abused its discretion by denying our motion for summary judgment. And the reason for that is, first of all, the sworn admissions in the record from Ms. Scafianos and two of the three professional standards board members who are common to the pay setting decisions of both the plaintiff and her comparator established that Ms. Scafianos testified. I boarded everybody the same except for the current pay set, essentially. It's undisputed, isn't it, that everybody, I think, is in agreement that when viewing the facts in favor of Dr. Boyer, it was a reasonable inference to say that prior pay was the only reason for the deferential, right? Yes, Your Honor. So you don't need to get into all of this, right? Well, but we also have moved for summary judgment, Your Honor. And we believe that after more especially makes clear that the plaintiff does not have to prove discriminatory intent. The government conceded the prima facie case here, which means that the burden is on the government to prove that it relied on some, that the differential came from another factor other than sex. And the holding that we're asking for is that that prior pay cannot be that other, by itself cannot be that other factor other than sex. But suppose we adopt that position, we agree with the 10th and 11th circuits or other courts that have adopted this middle position. What do you want us to do? I think the judgment below should be reversed. Then in summary judgment, judgment should be entered for the plaintiff because given that Moore reiterates that the burden is on the government to prove its affirmative defense, that means that when the party without the burden of proof... Should we remand it though back to the claims court for the claims court to reevaluate the competing summary judgment motions under the proper understanding of the statute, the EPA statute? I don't think so, Your Honor, because even under Yant, Yant said that the burden is on the government to prove its affirmative defense. And Yant was the case that used to say in the circuit that the plaintiff had to prove intentional discrimination as part of the prima facie case. But here, prima facie case was conceded. And so even though Moore changed the landscape significantly, I think within the context of this case, there was error even under Yant because the trial court below failed to hold the government to its burden of proof in establishing the affirmative defense. Okay, but you can't appeal the denial of a summary judgment motion. And the district or the court of federal claims has some discretion to deny a summary judgment motion and have a trial. Wouldn't we be better off remanding, as Judge Chen suggests, to have the judge consider whether to grant summary judgment and have further discovery and have a trial or whatever? Well, Your Honor, we are up here on cross motions for summary judgment. And it is, you're correct, an abuse of discretion standard. But Rule 56 says that summary judgment shall be granted. And so under that standard, it is an abuse of discretion when the trial court says, well, plaintiff has not developed the record that they're seeking to obtain summary judgment on. So therefore, plaintiff, you can't have summary judgment. But the burden wasn't on the plaintiff to develop the record. The burden was on the government to put forth evidence. If the government disagreed that prior pay alone was the reason for the pay disparity, the burden was on the government to come forward with evidence that some decision maker considered something else as summary judgment. And they didn't do that. What we have, essentially, in the summary judgment record, are, first of all, the admissions by two of the three members of the Pharmacy Standards Board, by Ms. Scafianos. And then we have the- I thought there was subsequent deposition testimony that sort of rolled some of that back. No, Your Honor. No? The admissions came straight from the depositions that were taken as part of the administrative EEO investigation. That's the undisputed record that we have here. Or maybe there was some claims court analysis that Ms. Scafianos wasn't actually the decision maker. So even if she said certain things, that's not really decisive in terms of whether or not prior pay alone was how she had her salary set. But that, again, goes back to the burden of proof, Your Honor. If the government was going to contend that Ms. Scafianos was not at least the de facto decision maker, the burden was on the government to put affidavits forward at summary judgment, to put evidence forward that some other decision maker considered something else beyond prior pay alone in differentiating these two candidates. I encourage Your Honors to look at the appendix, page 126 to 129, and 390 to 393. These are essentially the documentation of the two pay setting decisions. It begins with Ms. Scafianos' memo to the board. She's admitted under oath that she boarded everybody the same except for current pay stubs. If you look at the memo that the board wrote, the board action document, it's a two page document, you'll see that it's essentially Ms. Scafianos' memo cut and pasted and forwarded on to the approving authority for review. Again, nothing differentiating except saying Step 7 or Step 10 is recommended to most closely match current salary. Then you'll see the approving authority review. The only evidence that's in the record from the government on what the approving authority did in reviewing this is a check mark and a signature and a date. Just so I understand how you think the VA should have operated here under the law, when they hired Dr. Boyer, was it wrong for them at that time to hire her at 115K? Or was the real problem when they, half a year later, hired the male comparator at 126, then they should have leveled up Dr. Boyer at that time from her prior set pay of 115K up to 126? Or should they alternatively just said, whoops, we cannot hire this male comparator at 126. The best we can do for him is 115. Your Honor, I think obviously the pay disparity that's cognizable under the EPA didn't come into existence until the comparator was hired. But what the agency should have done is follow the procedures in the VA handbook which say that here are the things you have to consider. But could you just answer my hypothetical? We have an example in front of us. What should have happened that didn't happen in that fact pattern? And I think in that fact pattern, when she's hired at the salary that she's hired at, they have to look at who's there. And they'll see Ms. Boyer's there at this salary, they have somebody of equal experience coming in. And they have to consider that she is making less than they want to pay him. And so I think that you're right, they would have to hire him at a lower salary unless they... You don't remedy an EPA violation by reducing a current employee's salary. It doesn't speak directly to what you do with a prospective hire. But the EPA is not meant to punish one group over another. You're supposed to raise salaries to the level to equalize them. The cases you were talking about, the 10th and 11th circuit cases, I believe some of them refer to the phrase job-related factors. When they look at the other factors that are affirmative defenses and say what these have in common is they're job-related. Do you adopt that? If you do, what is your understanding of job-related? I think job-related is not the best word to describe what's really going on here. If you look at the affirmative defenses, it's essentially seniority, merit, production, and then the other factor other than sex. But those first three things are all things that legitimately make... The employer values the comparator more than the plaintiff if they have more seniority, if they have better merit, if they have more production. The affirmative defenses are all related to explanations for why the employer actually values the comparator more than the plaintiff. Or you could say looking at the employee's current job performance. Right, and the current job performance, and pay could be a proxy for that. But pay is not really what the employer values. No employer says, go out and find me the most highly paid pharmacist in Huntsville so I can say that I employ the most highly paid pharmacist in Huntsville. I mean, nobody says that. Nobody values high pay for itself. It's more like experience or certain education might be something an employer values. Right, and that's how I would look at it, Your Honor, is look at it in terms of what does the employer actually value. Because that gives the employer the discretion to say, this is what we value. We're not imposing our view on the employer. We're allowing the employer to come forward and prove why it actually values one employee more than the other. But the whole theory of 5333 in the veteran statute is that in terms of what the employee has to be paid to convince the employee, or the prospective employee has to be paid in order to convince that employee to join and justify something above the base rate. You consider the prior salary, and that is a factor other than sex, right? No, Your Honor. It's not a factor other than sex when you're looking at it through the EPA. And we're dealing with two different statutory regimes. Wait a minute. If it's not a factor other than sex, how can it be considered? Because the EPA doesn't say anything about the discretion that an employer has in general. What the EPA says is if you create a wage disparity, you can't justify it by reference to prior salary. These are two statutes. Even taken together with other factors? Because I understood other courts of appeals to recognize that you can consider prior pay together with other factors in making hiring decisions. Right, except for the 9th Circuit, the 10th and the 11th both say that as long as the employer considers some other factor, they can take prior pay into account. And I think in the context of Ms. Boyer's case, that makes sense. But here they didn't. We've got undisputed evidence showing that they were even with regard to everything, and that the only thing special that justified a departure was the current pay stubs. But the employer has the discretion, the agency has the discretion to consider all these factors when they're setting pay, but they also have the ability to constrain that discretion to avoid creating disparities that would violate the EPA, except with reference to prior pay. And I think the VA handbook is a great example of how the employer could have avoided this situation, because the VA handbook, contrary to the trial court's reasoning, the VA handbook actually instructs the VA to look at the number of current employees in the position and their pay rate, to look at possible employee relations problems that might arise, which is very consistent with the approach of the new revised regulation that we notice to the court. We'll notice the proposed rulemaking. Yes, the proposed rule, which again shows... That would essentially adopt the 9th Circuit position, wouldn't it? Well, except that it's not... It would essentially create a situation where it would not be possible to rely on prior pay, and then therefore create a pay disparity that would violate the 9th Circuit standard. Again, the proposed regulation is not an EPA regulation, it's a pay setting regulation. And it may be an overcorrection in the sense that it does this across the board without reference to, hey, you just can't use this to justify a pay disparity. Before you go, you're running out of time, maybe you can help me with one thing. I'm trying to understand some of the case law from circuit courts, what I'll call the middle ground circuits, which talk about how you can consider prior pay along with a mix of other factors. Do they explain exactly how to think about how you would analyze the prior pay factor vis-a-vis these other business-related factors such that it would be within the law of the EPA? I mean, is it all just a soup? You put it all into a soup and say, well, I consider this, I consider that, I consider the other thing. I didn't consider prior pay alone, and so because I considered other things, that's good enough. Or is there something a little more regimented that puts in tighter guardrails to ensure that the prior pay doesn't dominate the equation once you, quote-unquote, consider other factors? Yes, the guardrails would be the drum case, for instance, that we cited from the 8th Circuit that makes clear that, and some of the, it may be, the authority that we cited that makes clear that the employer has to prove that it actually relied on the factors that it's asserting. You can't say, oh, here are all these factors we can rely on when, in fact, prior pay was really the only thing that mattered. And so that's the employer's burden of proof, is to prove that it valued the employee more, not just to get them, but because they had some characteristic that created value for the employer beyond just, hey, this is what we needed to pay to hire this person. Thank you, John. Okay, we'll give you two minutes for rebuttal. Appreciate that. Thank you. Morning, and may it please the Court. Just to start, Your Honor, Judge Chun, with what to do with this case, first of all, there's no point to remand because, as the trial court correctly found, in federal law, prior pay alone is an other factor other than sex, the affirmative defense. And indeed... Do you understand the claims court as having done a statutory interpretation just for one class of employees, federal employees, that is a different statutory interpretation for factor four of the affirmative defenses compared to non-federal employees? Well, I think the question before the court was squarely related to a federal employee. Sure, but you're supposed to do one statutory interpretation, period. And it seemed like he created a statutory interpretation that's just specific to a certain class of employees, federal employees, that would be separate and different from a statutory interpretation of factor four for non-federal employees. But I think that's what the trial court had to do because he was faced with a federal employee with five USC, five 333, and a company... So then the meaning of factor four, any other factor other than sex, it morphs depending on what type of employee we're considering? Well, I think, as the trial court noted in a footnote, he wasn't, I believe it was at page appendix 30, he wasn't suggesting that these other circuits and how they settled on this issue was in any way incorrect. So your answer is yes. Yes, you are saying that there's a different interpretation of this language for federal employees than in other circuits, right? Yes. Okay. Do you know of any statute at all in which that has occurred? That is, that there's the same language, it's the same statute, and it applies differently to different people? Not off the top of my head, Your Honor, but I do think that an important, as part of this analysis, for instance, a private employee, which was the case in the Ninth Circuit Rizzo case, they don't have the benefit of there's a federal statute and the regulations that accompany it, and then VA and the handbook wholesale adopted. I thought they, by the way, I thought it was a state employee in Rizzo. I could be wrong, but I thought it was a state employee in which there was state law that was similar to the law that you're relying on in this case with respect to setting salary based on prior salary. And I believe you're correct, Your Honor, it was a state employee, but I think here, again, what is important to focus on is that with, in the context of federal employment, Congress itself has stated that there's the list of factors that may be considered, and prior pay or existing pay is one of them, and that's delineated in the regulation. Why is that inconsistent? Why couldn't you set somebody's pay based on prior salary and then also comply with the EPA by making sure that any differential isn't based on a factor other than sex? I don't think it is inconsistent, Your Honor, and I do think part of the problem here is that Dr. Boyer was hired, I believe, three months before the male comparator was, and so the question was, do you level up or what do you do? And at least for federal employment, the appointment statutes and the pay setting authority are only applicable at the day they step in the door or the first time of hire. And so there is not a procedure or mechanism to level up, per se, and what they did do here... Except for the Equal Pay Act. I mean, you know, when that was enacted in 1974, if you look at the legislative history, it's pretty clear that the intent was to bring federal employees under the Equal Pay Act and to apply the same rules to them as to private employers or state employers or whatever. To have a single rule, you've been clear that you're arguing that the rules aren't the same. How is that consistent with the 74 statute, which added federal employees to the Equal Pay Act? Well, I think it's consistent, Your Honor, because although the 10th and 11th circuits were mentioned, the 4th and 7th have said prior salary alone can be an affirmative defense. Number 4 for the 4th. But you're talking about the cases. I'm asking, in terms of the 74 statute, how could that be consistent with the 1974 statute amending the Equal Pay Act and federal employees to have a different rule for federal employees than for private employees when the whole purpose of the 74 statute was to create an equal approach? Well, I think, Your Honor, there is consistency, and as the trial court correctly said, they can be read harmoniously because even as late as, I believe, the latest revision to the pay setting authority was in 1990, and then there's also a separate VA statute, and that's a where that was enacted in 1991, where Congress explicitly said for certain VA employees pay can be, after considering an individual's existing pay, higher or unique qualifications. If we disagree with your position that a special interpretation applies to federal employees because there's these congressional statutes that say that you can set pay based on prior salary, what is the government's interpretation of a differential based on any factor other than sex, and does it include prior salary? The answer is yes, and I think first of all, with the 4th factor, it should always be gender neutral, and in this instance, it was applied gender neutrally, and I would note that in the record, it shows that although the male comparator was hired at Dr. Boyer's appointment at Appendix 180, it shows that two other females were hired also at a Step 10, again, justified based on prior salary, and as there's although depositions were not taken before the court of federal claims. I understand you're answering the context of this case, but is there an interpretation of the language? I asked you for an interpretation. Yes, and I think the interpretation of the language is that with the other factor other than sex, in this particular instance, because Congress has said you can use prior pay alone, the regulations say so, and I would also point to How is it inconsistent with the 5333 in the Veterans Statute to say that you can consider prior pay but only as one factor? It's not inconsistent, Your Honor, because the list is disjunctive, and also the proposed regulations You must not have understood my question. If we were to adopt the middle ground that the appellant here is urging, why is that inconsistent with 5333 in the Veterans Statute? I'm having difficulty seeing why those statutes can't accommodate the middle ground to the Equal Pay Act. I think to adopt what Dr. Boyer advocates for would be inconsistent because the pay setting statute itself says existing pay or unusually high or unique qualifications, and also OPM has spoken to this direct question, where with the Supplement Authority that was filed on October 30th with the proposed rule, it explicitly states, and this is on the ECF number, but I guess it's within the rule, that the current regulations state that they may consider one or more factors. One of these factors is the candidate's existing salary, recent salary history, or salary documented in a competing job offer, and OPM itself has said But that's not inconsistent with the middle ground. You can consider it as a factor. The middle ground doesn't say you can't consider it at all. It says you consider it as a factor, and I'm just having difficulty seeing how that's inconsistent with 5333 in the Veterans Statute. Well, I think it's inconsistent, Your Honor because as it states in 533, as well as the regulation, it says or. It doesn't say one or more. It doesn't say existing pay plus another factor, and that's also true in the VA Handbook, which is at the appendix pages 78 and 79, where it says candidate's existing pay or recent salary history, and so it never says in the various statutes or the regulation accompanying the USC 5333 that it's existing pay plus another factor, and I think that really, as the trial court correctly explained, without having one plus required to do something else, that for federal employees, at least when Dr. Boyer was hired through the present day until the rule has changed, that agencies may look at prior pay alone. The proposed rulemaking eliminates the ability to look at prior pay when setting federal employees' salary, correct? Yes. And when does that go into effect? Your Honor, comments were due on that. I believe in June, and so I looked online before this hearing, and so far there has not been a final proposed rule. So you haven't decided what to do, right? Correct. And so that's still an outstanding question, but I would also note that there were other factors, so again notice of proposed rulemaking talks about the pernicious effect of relying on laws that have eliminated the use of prior pay has seen the wage gap between men and women narrow considerably. It does speak to that, Your Honor, and also the trial court had before it, I believe there's an executive order by President Biden announcing that he was asking OPM to look at these things and to look at prior pay. Is there some kind of executive order that requires federal agencies to somehow do some kind of intra-office audit periodically to make sure that there is in fact equal pay for equal work within different offices of different agencies? Not to my knowledge, but I think the closest that gets to it was President Biden's request to OPM to examine salary, and I do think that would go to the question here of, as the trial court noted, there was no evidence on this record that historically pay for female pharmacists has been depressed compared to male pharmacists, and in addition, Dr. Boyer had stated that she'd accepted this job at a state hospital because it had more perks and benefits, but even so, even if, and we believe that the trial court was correct that prior pay alone is an affirmative defense, but even so, before the EEO, different members of the Pharmacy Standards Board testified that pay, although it may be more of a heavy thumb on the scale, that there were other factors considered, and it's really more of an algorithm, such as experience, education, the male comparator had two different advanced degrees that weren't required. But what happened in this particular instance? I guess what I'm wondering is, what if we blow up the claims court's interpretation that prior pay alone is good enough, and we say no. What else is left here? Why shouldn't the plaintiff be granted summary judgement? Well, what else is left here, Your Honor, is that other factors were considered. What are those? What's that? What are those? Oh, so... More experience, right? Yes, and again, within the record, it was explained by, for instance, Ms. Brookshire, this is Appendix 279, we look at their education, training, and qualifying experience. Right, so I guess what I'm trying to figure out is, what is the delta in favor of the male comparator in terms of education or experience? Because I'm not aware of any in this particular fact pattern. It was explained, Your Honor, that he had, I believe, and this is in Appendix 282, he had an MS degree in biological sciences and a BS degree, and those were not required for pharmacy school, but that was additional education that he had. And she has a PhD, right? A PharmD, Your Honor. A PharmD, does he have that? Yes, and that's a requirement, that's a basic requirement in order to be a pharmacist at the VA. How many more years of experience does she have over him? I believe she had seven years of experience. More? Seven more years, yes, Your Honor. And that he, again, had the different degrees and they also had worked at different places in the past. Did they work at different places? Did anyone say that that mattered in terms of determining, other than that he had a higher salary? Was there anything significant to that that related to the job? Well, and that has to be listed in their boarding packet as to where they have worked. I mean, there's no testimony saying that that was part of the differential, right? Or the reason for the differential in pay, in other words. No, and that's correct, Your Honor. But even so, again, if this court were to find that prior pay plus something needs to be considered, there is evidence in this record that the, again, although prior pay may have been an easier way to board people at a higher rate, that that was considered by the agency in setting the different pay rates for Dr. Boyer and the male comparator. And if there's nothing else, we respectfully request that the court affirm the trial court's holding. Okay, thank you. Mr. Smith, you have a couple minutes. Thank you, Your Honors. I think both sides agree that there's no need for remand in this case, that it turns on this clear legal issue that we've been heading towards all along. In terms of, I believe Your Honors are absolutely correct that the statute means what it means. There's no one statute for federal employees. The whole idea of this statute is to hold federal employees to the same standards as federal employers to the same standards as private employers. In terms of the statute itself, we have the word or appearing over and over again, disjunctive. If that were to conflict with the commands of the EPA, it would have to say must. They must consider prior pay. But it doesn't say that. It just says they can consider all these things or, or, or. And that sort of disjunctive permissive structure of the statute just means that the agency is given discretion and that it has the freedom to constrain its discretion in order to comply with the EPA and avoid creating a disparity that would otherwise be cognizable solely by reference to the prior pay. Again, the admissions in this case are unequivocal. Ms. Scafianas unequivocally admitted that prior pay, that she boarded them exactly the same with nothing, reference to nothing special other than their current pay stubs. Two of the three pharmacy standards boards gave testimony that experience just goes by the wayside. And if you look in the appendix, there's even testimony in the record. Appendix 290, asking human resources, is there a difference in qualifications between Step 7 and 10? There's no difference in qualifications. Prior pay is the only factor here. And because the record undisputably demonstrates that prior pay was the only factor, there's no difference in qualifications.